Robert J. Brener (RB 3764)
EDWARDS ANGELL PALMER & DODGE LLP
One Giralda Farms
Madison, New Jersey 07940
973.520.2300
Attorneys for Plaintiff

U.S. DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMS PROFITS LLC., | : | Civil Action No. |
| Plaintiff, | : | Civil Action |
| v. | : | |
| TURNBERRY MEWS, LLC and JAMES B. HARRISON, | : | **COMPLAINT** |
| Defendants. | : | |

Plaintiff, Jams Profits LLC., by and through its attorneys, Edwards Angell Palmer & Dodge LLP, alleges for its Complaint against defendants Turnberry Mews, LLC and James B. Harrison as follows:

**THE PARTIES**

1.     Plaintiff Jams Profits LLC is a Delaware limited liability company with its principal place of business in New York, New York.

2.     Turnberry Mews, LLC is a Pennsylvania limited liability company located at 1 Fox Chase Drive, Watchung, New Jersey.

3.     Defendant James B. Harrison is a resident of New Jersey.  His home address is 1 Fox Chase Drive, Watchung, New Jersey.  Upon information and belief, Harrison is the sole principal of Turnberry Mews, LLC.

## JURISDICTION AND VENUE

4.      The United States District Court for the District of New Jersey has *in personam* jurisdiction over Harrison because he is a citizen of New Jersey and over Turnberry Mews, LLC because it has continuous and substantial contacts in New Jersey, including but not limited to maintaining on office and conducting business in New Jersey, and because the causes of action against Defendants arise out of their contacts and conduct within the State.

5.      The United States District Court for the District of New Jersey has jurisdiction of this action under the jurisdictional provisions of 28 U.S.C. §1332(a) in that the matter in controversy exceeds $75,000 exclusive of interest and costs, and is between citizens of different states.

6.      Venue in this district is proper pursuant to 28 U.S.C. §1391 (a).

## COUNT ONE

7.      On June 2, 2008, Turnberry Mews, LLC, in consideration of a loan in the amount of $450,000 executed a Term Loan Note (the "Note") wherein it promises to pay James Profits LLC the principal sum of $450,000,000, together with interest on the unpaid principal balance in the amount of 15% per annum.  Annexed as exhibit A and made a part hereof is a true copy of the Note.

8.      Among other requirements, the Note obligated Turnberry Mews to make a principal payment to Jams Profits LLC in the amount of $350,000 on or before October 1, 2008.

9.      Under the terms of the Note, a failure to pay any principal of, or interest on, the Note when same becomes due and payable constitutes an Event of Default.

10.      Turnberry Mews failed to make this principal payment by October 1, 2008. Accordingly, Turnberry Mews, defaulted on its obligations under the Note.

11.     Upon the Event of Default, the Note obligates Turnberry Mews, LLC, upon the election of Jams Profit LLC, to pay the entire unpaid principal amount of the Note, together with accrued interest, without notice or demand.

12.     In addition, the Note provides that all amounts which have not been paid shall bear interest until full payment is made to Jams Profit LLC at the rate of 24% per annum, instead of the 15% rate.

13.     Further, the Note obligates Turnberry Mews, LLC to pay a late payment charge equal to 8% of the overdue amount.

14.     Finally, the Note obligates Turnberry Mews, LLC to pay all of Jams Profit LLC's legal fees, costs and expenses related to enforcement of the Note and collection of the amounts due and payable.

15.     Although not required by the Note, on October 8, 2008, Jams Profit LLC notified Harrison of Turnberry Mews, LLC that Jams Profit LLC has elected to accelerate the entire unpaid balance of the Note, that all amounts due under the Note, from and after October 1, 2008, shall bear interest at the rate of 24% per annum, that Turnberry Mews, LLC had been assessed and owed a late penalty, and that it was liable for Jams Profit LLC's legal fees incurred to date and going forward.

16.     As of October 21, 2008, the total amount due and payable under the Note is $482,712.76, which consists of principal in the amount of $450,000, interest in the amount of $7,025.26, a late penalty payment of $28,000, and legal fees in the amount of $2,500, less $4,812.50, which remains in an interest reserve.

WHEREFORE, plaintiff demands that judgment be entered in its favor against Turnberry Mews, LLC for:

- 3 -

a.      principal in the amount of $450,000;

b.      interest in the amount of $7,025.26 and continuing to accrue at the rate set forth in the Note;

c.      late payment penalty in the amount of $28,000;

d.      costs of suit;

e.      attorney's fees; and

f.      such other relief as the Court deems just and equitable.

## COUNT TWO

17.     Plaintiff repeats and realleges each and every allegation of the Complaint as if set forth at length herein.

18.     As a condition of Jams Profit LLC lending money to Turnberry Mews, LLC, Jams Profit LLC acquired and relied upon the personal, unconditional guaranty of Harrison memorialized in an agreement entitled Guaranty Agreement and executed by Harrison on June 2, 2008 (the "Guaranty"). Annexed as exhibit B and made a part hereof is a true copy of the Guaranty.

19.     Pursuant to the Guaranty, Harrison absolutely and unconditionally guarantees to Jams Profits LLC full and prompt payment and performance, when due, of all obligations of any nature under the Note.

20.     The Guaranty further provided that the obligations of Harrison thereunder were independent of Turnberry Mews, LLC's obligations under the Note, and a separate action or actions may be brought and prosecuted against Harrison, irrespective of whether any action is brought against Turnberry Mews, LLC or whether Turnberry Mews, LLC is joined in any such action or actions.

21.   Pursuant to the Guaranty, Harrison waived, inter alia, any right or claim that Jams Profit LLC should pursue or exhaust any right or remedy which Jams Profit LLC may have against Turnberry Mews, LLC or which Jams Profit LLC may have with respect to any collateral for any of the obligations under the Note.

22.   The Guaranty is by its terms a continuing guaranty that remains in full force and effect until the payment in full of Turnberry Mews, LLC's obligations under the Note.

23.   On October 8, 2008, Jams Profit LLC demanded payment from Harrison for the amounts due under the Note, but Harrison has failed and refused to pay the same.

WHEREFORE, plaintiff demands that judgment be entered in its favor against Harrison for:

a.   principal in the amount of $450,000;

b.   interest in the amount of $7,025.26 and continuing to accrue at the rate set forth in the Note;

c.   late payment penalty in the amount of $28,000;

d.   costs of suit;

e.   attorney's fees; and

f.   such other relief as the Court deems just and equitable.

Dated: October 22, 2008

Robert J. Brener (RB 3764)
EDWARDS ANGELL PALMER & DODGE LLP
One Giralda Farms
Madison, New Jersey
973.520.2300
Attorneys for Plaintiff

- 5 -

# EXHIBIT A

# TERM LOAN NOTE

PRINCIPAL AMOUNT:  $450,000.00                    DATED: June 2nd, 2008

**FOR VALUE RECEIVED, TURNBERRY MEWS, LLC, a Pennsylvania limited liability company** having its address at #1 Fox Chase Drive, Watchung, New Jersey 07069 (the "Payor or "Borrower") promises to pay to the order of **JAMS PROFITS LLC**, or its successors and assigns at 1 Penn Plaza, Suite 410, New York, New York 10119, or at such other place as the Holder shall notify the Payor in writing (the "Holder" or the "Lender"), principal sum of Four Hundred Fifty Thousand ($450,000.00) Dollars (the "Loan") together with interest on the unpaid principal balance, payable as provided below:

1.    **Subject to Loan Documents.**

1.1    The obligations of the Payor under this Note are subject to and/or secured by, among other things:

(a)    An Open-End Mortgage, Assignment of Rents, Security Agreement and Fixture Filing ("Mortgage") encumbering all of the interest of Payor in and to real property known as Unit 1A, 2566 Jamann Court, Tax Parcel N6NE2-2-3-1A; Unit 1B, 2570 Jamann Court, Tax Parcel N6NE2-2-3-1B; Unit 1C, 2574 Jamann Court, Tax Parcel N6NE2-2-3-1C; Unit 1D, 2578 Jamann Court, Tax Parcel N6NE2-2-3-1D; Unit 1E, 2582 Jamann Corut, Tax Parcel N6NE2-2-3-1E; Unit 7A, 937 Greenhouse Drive, Tax Parcel N6NE2-2-3-7A; Unit 7B, 939 Greenhouse Drive, Tax Parcel N6NE2-2-3-7B; Unit 7C, 941 Greenhouse Drive, Tax Parcel N6NE2-2-3-7C; and Unit 7D, 943 Greenhouse Drive, Tax Parcel N6NE2-2-3-7D, City of Bethlehem, Northampton County, Pennsylvania. ("Mortgaged Premises").

(b)    A valid and perfected first priority security interest in all personalty, including, without limitation, goods, inventory, furniture, fixtures, equipment now or hereafter owned and the proceeds thereof appurtenant to the Mortgaged Premises;

1.2    A Guaranty Agreement by James B. Harrison in favor of the Lender (the "Guaranty");

1.3    An Environmental Indemnity Agreement by Borrower and James Harrison in favor of Lender (the "Environmental Indemnity");

1.4    The terms and provisions of the Mortgage, Guaranty, Environmental Indemnity and all other documents and instruments referred to therein or executed and delivered pursuant thereto or in connection therewith, (all the foregoing are hereinafter referred to as the "Loan Documents") are incorporated herein by reference and made a part hereof.

1.5    The rights, powers and remedies given to the Holder under this Note shall be in addition to all rights, powers and remedies given to the Holder by virtue of the Loan Documents and any and all other documents in connection therewith, and any statute or rule of law or equity.

NWK 212745.2

2.     **Rate of Interest**.  The principal amount outstanding under this Note during the term of this Note shall bear interest at the rate of fifteen (15%) percent per annum. All computations of interest shall be based on the actual number of elapsed days until receipt of payment based on a three hundred sixty (360) day year. Principal and other amortization payments shall be applied to the Loan balance as and when actually received by Lender.

3.     **Repayment.**  Principal and interest shall be paid during the term of this Note in the following manner:

3.1     The Payor shall make three (3) consecutive monthly payments of interest only, commencing on July 1, 2008 and continuing on the first day of each month thereafter for three (3) consecutive months, until September 1, 2008.

3.2     The Payor shall make a payment of principal, in the amount of Three Hundred Fifty Thousand ($350,000.00) Dollars, in addition to all accrued interest, together with any and all other costs, expenses and other charges of any nature whatsoever due hereunder on or before October 1, 2008.

3.3     The Payor shall make three (3) consecutive monthly payments of interest only, commencing on November 1, 2008 and continuing on the first day of each month thereafter for three (3) consecutive months, until January 1, 2009.

3.4     The Payor shall make a final payment of the entire unpaid principal balance, accrued interest under this Note, together with any and all other costs, expenses and other charges of any nature whatsoever hereunder by February 1, 2009 (the "Maturity Date").

3.5     Upon the failure of the Payor to make any payments hereunder by the date which is five (5) days from the date when due, the Payor shall pay a late payment charge on all amounts overdue in an amount equal to eight (8%) percent of the overdue amount. The foregoing late charge is intended to compensate Lender for the expenses incident to handling any such delinquent payment and for the losses incurred by Lender as a result of such delinquent payment. Borrower agrees that, considering all of the circumstances existing on the date this Note is executed, the late charge represents a reasonable estimate of the costs and losses Lender will incur by reason of late payment. Borrower and Lender further agree that proof of actual losses would be costly, inconvenient, impracticable and extremely difficult to fix. Acceptance of the late charge shall not constitute a waiver of the default arising from the overdue installment, and shall not prevent Lender from exercising any other rights or remedies available to Lender. While any Event of Default exists, the Loan shall bear interest at the Default Rate.

3.6     All payments pursuant to this Note should be made in immediately available funds.

4.     **Events of Default.**  The following shall constitute an Event of Default under this Note:

4.1     Failure to make any principal, interest or any other payments required hereunder or under the Loan Documents by the date when due.

4.2     The occurrence of any Event of Default under any of the Loan Documents.

5.     **Acceleration Upon Default.**  Upon the occurrence of an Event of Default, the entire unpaid principal balance of this Note, together with all accrued interest shall, at the option of the Holder, immediately become due and payable without notice or demand.  Upon acceleration as hereinabove provided or during an Event of Default, all amounts due hereunder, whether principal, interest or otherwise, which have not been paid, shall bear interest from such date to the date payment in full is received by the Holder at the rate of interest of Twenty Four (24%) percent per annum, instead of the rate established in Paragraph 2 of this Note (the "Default Rate").

6.     **Prepayment.**  The Payor may prepay this Note, in whole or in part, at any time upon thirty (30) days written notice to Lender, provided, that, in the event Borrower prepays any sums under this Note prior to October 1, 2008, such payment shall be accompanied by a prepayment charge equal to the amount of interest the Borrower would have paid and that Lender would have earned on the Loan had Borrower not made the prepayment prior to October 1, 2008; such sum to be determined by the Lender.

7.     **Cumulative Remedies; Waivers by Payor**.  No remedy referred to herein is intended to be exclusive, but each shall be cumulative and in addition to any other remedy above or otherwise available to the Holder under any of the Loan Documents, at law or in equity.  **THE PAYOR HEREBY WAIVES PRESENTMENT, DEMAND FOR PAYMENT, PROTEST AND NOTICE OF DISHONOR OF THIS NOTE AND ALL OTHER NOTICES AND DEMANDS. TRIAL BY JURY IS ALSO WAIVED.**

8.     **Reserve Fund**.  Upon closing the Loan Borrower shall pay to Lender such amounts as are estimated by Lender to be sufficient to create and maintain a reserve fund from which to pay (a) all interest payable under this Note until the Maturity Date, and (b) all real estate taxes on the Mortgaged Premises due until the Maturity Date.  The amounts provided for in this Paragraph shall be referred to as the "Reserve Fund".  Borrower hereby pledges to Lender any and all monies now or hereafter deposited into the Reserve Fund as additional security for the payment of the Loan.  In the event an Event of Default shall occur, Lender may credit any amount remaining in the Reserve Fund against the Loan in such amounts and in such proportions as Lender in its sole discretion shall deem proper.  If the Reserve Fund is not sufficient to fully pay real estate taxes and/or interest when due, Borrower shall promptly pay to Lender, upon demand, an amount which Lender shall estimate as sufficient to make up the deficiency.  The Reserve Fund shall not constitute a trust fund and may be commingled with other monies held by Lender.  No earnings or interest on the Reserve Fund shall be payable to Borrower.

9.     **Certification by Executing Party.**  The Payor, by executing this Note and delivering same to the Holder, hereby certifies to the Holder, knowing and intending that the Holder is relying hereon in making the loan evidenced by this Note, that: (i) there is no Event of Default and no event which with the giving of notice or lapse of time, or both would become an Event of

- 3 -

Default; (ii) all representations, warranties and covenants of the Payor and Guarantor made in the Loan Documents are true and accurate and complete; and (iii) the Payor shall comply with all of the terms and conditions in the Loan Documents.

10. **Non-Waiver.** Failure by the Holder to insist on the strict performance of any or all of the terms, provisions and covenants contained in this Note shall not be construed as a waiver or relinquishment for the future of any term, provision or covenant herein.

11. **Usury.** All provisions of this Note and the Loan Documents are expressly subject to the condition that, in no event, whether by reason of acceleration of maturity of the indebtedness evidenced hereby or otherwise, shall the amount paid or agreed to be paid to the undersigned hereunder and deemed interest under applicable law exceed the maximum rate of interest on the unpaid principal balance of this Note allowed by applicable law (the "Maximum Allowable Rate"), which shall mean the law in effect on the date of this Note, except that if there is a change in such law which results in a higher Maximum Allowable Rate being applicable to this Note, then this Note shall be governed by such amended law from and after its effective date. In the event that fulfillment of any provision of this Note or the Loan Documents results in the interest rate hereunder being in excess of the Maximum Allowable Rate, the obligation to be fulfilled shall automatically be reduced to eliminate such excess. If, notwithstanding the foregoing, the Lender or any other holder of this Note receives an amount which under applicable law would cause the interest rate hereunder to exceed the Maximum Allowable Rate, the portion thereof which would be excessive shall automatically be applied to and deemed a prepayment of the unpaid principal balance of this Note and not a payment of interest.

12. **Agreement to Pay Attorney's Fees and Expenses.** The Payor agrees to pay all of the Lender's legal fees in connection with the preparation of this Note and the Loan Documents. If this Note is placed in the hands of an attorney for collection, by suit or otherwise, or to enforce its collection or terms, or to protect the security for its payment, irrespective of whether there is an Event of Default, Payor immediately and without demand will pay all costs of collection, litigation, enforcement and discharge together with a reasonable fee of such attorneys and costs related therewith in accordance with Paragraph 11 of this Note.

13. **Choice of Law.** The terms of this Note shall be governed by the laws of the State of New Jersey.

**IN WITNESS WHEREOF,** the Payor has duly executed this Note the day and year first above written.

WITNESS:

BORROWER: **TURNBERRY MEWS, LLC a Pennsylvania limited liability company**

BY: _James B. Harrison, Member_

NWK 212745.2

## ACKNOWLEDGEMENT

STATE OF *Pennsylvania*)
          : SS:
COUNTY OF ___*Lehigh*___ )


On the *2nd* day of *June*, 2008, before me personally came James B. Harrison, who is the Member of Turnberry Mews, LLC., a Pennsylvania limited liability company, being by me duly sworn, did depose and say that he executed the foregoing instrument, and that he has the authority to sign the same, and acknowledged that he executed the same as the act and deed of said company.

*Mary Louise Hardcastle*

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Louise Hardcastle, Notary Public
Upper Saucon Twp., Lehigh County
My Commission Expires March 31, 2009
Pennsylvania Association of Notaries

- 5 -

# EXHIBIT B

GUARANTY AGREEMENT

BY

JAMES B. HARRISON

IN FAVOR OF

JAMS PROFITS LLC

DATED: June ⟶2⟵, 2008

1

## GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (this "Agreement" or "Guaranty Agreement") is made as of the 2nd day of June, 2008, by **JAMES B. HARRISON**, residing at # 1 Fox Chase Drive, Watchung, New Jersey 07069 (the "Guarantor") in favor of **JAMS PROFITS LLC**, having an address at 1 Penn Plaza, Suite 410, New York, New York 10119 (the "Lender").

## W I T N E S E T H :

**RECITALS:**

A.     On even date herewith, Lender has made a loan in the amount of Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00) (the "Loan") to Turnberry Mews, LLC, a New Jersey limited liability company (the "Borrower"), which Loan is evidenced by a certain Term Loan Note of even date herewith, made by the Borrower and payable to the order of the Lender in the original principal amount of Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00) (the "Note").

B.     The Borrower's obligations under the Note are secured by, among other things, (i) a certain Open-End Mortgage, Assignment of Rents, Security Agreement and Fixture Filing ("Mortgage") creating (a) a first priority lien in favor of the Lender on all of the interest of Borrower in and to real property known as Unit 1A, 2566 Jamann Court, Tax Parcel N6NE2-2-3-1A; Unit 1B, 2570 Jamann Court, Tax Parcel N6NE2-2-3-1B; Unit 1C, 2574 Jamann Court, Tax Parcel N6NE2-2-3-1C; Unit 1D, 2578 Jamann Court, Tax Parcel N6NE2-2-3-1D; Unit 1E, 2582 Jamann Corut, Tax Parcel N6NE2-2-3-1E; Unit 7A, 937 Greenhouse Drive, Tax Parcel N6NE2-2-3-7A; Unit 7B, 939 Greenhouse Drive, Tax Parcel N6NE2-2-3-7B; Unit 7C, 941 Greenhouse Drive, Tax Parcel N6NE2-2-3-7C; and Unit 7D, 943 Greenhouse Drive, Tax Parcel N6NE2-2-3-7D, City of Bethlehem, Northampton County, Pennsylvania (the "Mortgaged Premises"); (ii) a valid and perfected first priority security interest in all personalty, including, without limitation, goods, inventory, furniture, fixtures, equipment now or hereafter owned by Borrower;and the proceeds thereof;

C.     Among the conditions precedent to the Lender making the Loan, the Lender has required that the Guarantor, for valuable consideration, executes and delivers to the Lender this Agreement whereby the Guarantor guarantees the full, prompt and unconditional payment and performance, when due, of all obligations and indebtedness owed by the Borrower to the Lender.

D.     The Guarantor represents to Lender, knowing and intending Lender to rely thereon that the Guarantor acknowledges and agrees that he receives a direct benefit from the Loan, and therefore, the guarantee for the Loan is supported by valuable consideration.

E.     All words and terms not defined herein shall have the respective meanings and be construed herein as provided in the Note.

NOW, THEREFORE, for good and valuable consideration for the making of the Loan, and with the knowledge that the Lender would not make the Loan, but for the promises of the Guarantor hereunder, the Guarantor, for the benefit of the Lender, hereby absolutely and unconditionally represents, warrants, covenants and agrees as follows:

1.      The Guarantor hereby absolutely and unconditionally guarantees to the Lender, and its successors, endorsees and assigns, the full and prompt payment and performance, when due, of all obligations of any nature whatsoever, loans, advances, extensions of credit, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, each of every kind, nature and description, whether arising under the Note, the Loan or any document in connection therewith, including, without limitation, the mortgage and security agreement and assignment of leases which secure the Loan (all of the Borrower's obligations to the Lender hereinafter being collectively referred to as the "Obligations"), and agree to pay any and all expenses including, without limitation, reasonable legal fees, which may be incurred by the Lender in enforcing any rights or remedies in connection with, and in collecting, any or all of the Obligations.

2.      This Guaranty Agreement is a primary obligation of the  Guarantor and shall be a continuing inexhaustible Guaranty Agreement.  The Guarantor guarantees that the Obligations will be paid and fully performed strictly in accordance with their terms, regardless of any law, regulation or decree now or hereafter in effect in any jurisdiction which might in any manner effect any of such terms of the Lender's rights with respect thereto, or which might cause or permit to be invoked any alteration in the time, amount or manner of payment by the Borrower of any of the Obligations.

3.      The Lender may, in its sole and absolute discretion, proceed to exercise any right or remedy which it may have under this Guaranty Agreement or by law (such rights and remedies being cumulative and not alternative or exclusive) without pursuing or exhausting any right or remedy which the Lender may have against the Borrower, or any other person or entity, or which the Lender may have with respect to any collateral for any or all of the Obligations of the Borrower or any other guaranty of the Obligations, including, without limitation, without joining the Borrower as a party in any action brought to enforce the provisions hereof; and the Lender may proceed to exercise any right or remedy which it may have under this Guaranty Agreement without regard to any actions or omissions of the Borrower or any other person.

4.      To the extent this provision is not inconsistent with or in violation of law, the Obligations of the Guarantor hereunder shall be absolute and unconditional and shall continue to remain in full force and effect irrespective of the validity, legality or enforceability of the Note, or any agreements, notes or documents pursuant to which the Obligations arise, or the value or condition of any collateral for any or all of the obligations, or of any other guaranty of the Obligations, or any other circumstance which might otherwise constitute a legal or equitable discharge of a surety or guarantor, and this Guaranty Agreement and the obligations of the Guarantor hereunder shall be irrevocable.

5.      Without limiting the generality of Section 4 of this Guaranty Agreement, the Guarantor hereby consents and agrees that, at any time, and from time to time, without affecting the legality or

2

enforceability of the Guaranty Agreement that:

(a)     the time, manner, place or terms of payment of all or any of the Obligations may be settled, released (by operation of law or otherwise), compounded, compromised, collected, liquidated, extended (one or more times) or modified;

(b)     any and/or all of any collateral for any or all of the Obligations may be exchanged, released, surrendered, or otherwise disposed of in the sole and absolute discretion of the Lender;

(c)     any action may be taken under or in respect of the Note or any agreements, notes or documents pursuant to which the Obligations arise, in the exercise of any remedy, power or privilege therein contained or otherwise with respect thereto, or such remedy, power or privilege may be waived, omitted, or not enforced;

(d)     the time for the Borrower's performance of or compliance with any term, covenant or agreement on its part to be performed or observed in connection with the Loan or any agreements, notes or documents, pursuant to which the Obligations arise, may be renewed or extended (one or more times), or such performance of compliance waived, or failure in or departure from such performance or compliance consented to by and in the sole and absolute discretion of the Lender;

(e)     the Note or documents pursuant to which the Obligations arise, or any term of any thereof, may be amended or modified in any respect (including, without limitation, with respect to interest rates) in the sole and absolute discretion of the Lender; and

(f)     the liability of the Borrower to pay any and all of the Obligations may be settled or compromised, and payment of any and all of such Obligations may be subordinated to the prior payment of any other debts of, or claims against, the Borrower; all in such manner and upon such terms as the Lender may deem proper, without notice to or further assent from the Guarantor, and all without affecting this Guaranty Agreement or the Obligations of the Guarantor hereunder, which shall continue in full force and effect until the Obligations and all obligations of the Guarantor hereunder shall have been fully paid and performed.

6.     Unless required by law, the Guarantor hereby waives notice of acceptance of this Guaranty Agreement, presentment, demand, protest, notice of the occurrence of an Event of Default hereunder or under the Note evidencing the Loan, any and all other notices of any kind whatsoever, with respect to the Obligations, and promptness in making any claim or demand hereunder; but no act or omission of any kind shall in any way affect or impair this Guaranty Agreement. Furthermore, the release of any other guaranty shall not affect the Obligations of the Guarantor hereunder. The Guarantor also hereby waives any right or claim of right to cause a marshalling of the Borrower's assets or to cause the Lender to proceed against any of the security or collateral held by the Lender before proceeding against the Guarantor, and the Guarantor hereby waives any and all legal requirements that the Lender shall institute any action at law or in equity against the Borrower, or anyone else, with respect to the Loan Documents and/or any documents, agreements or instruments executed by the

3

Borrower or with respect to any security held by the Lender, as a condition precedent to bringing any action against the Guarantor upon this Guaranty Agreement.

7.     This Guaranty Agreement shall continue to be effective or be reinstated, as the case may be, if at any time, prepayment, payment, or other value received by the Lender, from any source, or any part thereof, of any of the Obligations, is rescinded or must otherwise be restored or returned by the Lender upon the insolvency or bankruptcy of the Borrower, or otherwise, all as though such payment had not been made.

8.     The Guarantor hereby irrevocably waives and relinquishes any and all statutory, contractual, common law, equitable or other claims and rights (i) to seek reimbursement, contribution indemnification, set-off or other recourse from or against the Borrower in connection with any payments made by the Guarantor under this Guaranty Agreement and (ii) to be subrogated to the Lender's rights under any loan documents executed by the Borrower and the Lender upon the Guarantor's performance under this Guaranty Agreement.  The foregoing waiver and relinquishment shall terminate and become ineffective and null and void at such time as the Obligations have been paid in full.

9.     The Guarantor hereby represents and warrants to the Lender as follows:

(a)     That neither the execution and delivery of this Guaranty Agreement or any other document, agreement, certificate and instrument to which he is a party or by which he is bound in connection with the Loan, nor the consummation of the transactions contemplated hereunder or thereunder or the compliance with or performance of the terms and conditions herein or therein will result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of any Guarantor, except as permitted in or anticipated by this Guaranty Agreement, the Note or the Loan and mortgage and security agreement executed by the Borrower on even date herewith, or is prevented by, limited by, conflicts with or will result in the breach or violation of or a default under the terms, conditions or provisions of (i) any indenture, evidence of indebtedness, loan or financing agreement, or other agreement or instrument of whatever nature to which he is a party or by which he is bound, or (ii) any provision of any existing law, rule, regulation, order, writ, injunction or decree of any court or governmental authority to which the Guarantor is subject.

(b)     The Guarantor represents and warrants that he is not a party to any action, suit, proceeding, inquiry, hearing or investigation pending, in any court of law or in equity, or before or by any governmental authority wherein there is a possibility that an unfavorable determination, decision, decree, ruling or finding would (i) adversely affect the transactions contemplated by the Agreement of Guaranty and its ability to perform its obligations hereunder, or (ii) adversely affect the validity or enforceability of this Guaranty Agreement.  The Guarantor represents and warrants that he is not in violation of or default with respect to any order, writ, injunction, decree or demand of any such court or governmental authority.

(c)     The Guarantor represents and warrants that (i) all consents, approvals, orders or authorizations of, or registrations, declarations or filings with any governmental authority which are

4

NWK 212755.2

required in connection with the valid execution and delivery of this Guaranty Agreement, and the carrying out or performance of any of the transactions required or contemplated hereunder to be performed by him, have been obtained or accomplished and are in full force and effect, and (ii) all timely consents, approvals, orders or authorizations of, or registrations, declarations or filings with any governmental authority which are required in connection with the making of the Loan to the Borrower has been obtained or accomplished and are in full force and effect, or can be obtained by the Borrower.

(d)     The Guarantor represents and warrants that (i) the assumption by them of their obligations hereunder will result in material benefits to it, and (ii) this Guaranty Agreement when executed and delivered by the Guarantor will constitute a legal, valid and binding obligation on his part, enforceable against him in accordance with its terms, subject, as to enforcement of remedies only, to any applicable bankruptcy, insolvency, reorganization, moratorium, similar laws of general application at the time in effect and general principles of equity.

(e)     The Guarantor represents and warrants that (i) he has duly filed or caused to be filed all federal, state and municipal tax reports and returns which are required to be filed by him and has paid or made adequate provision for the payment of, all taxes, assessments, fees and other governmental charges which have become due pursuant to said returns, or otherwise pursuant to any assessment received by them, except such taxes, if any, as are being contested in good faith by him by appropriate proceedings and for which he has maintained adequate reserves or accrued the estimated liability on their balance sheet for the payment thereof.

(f)     The Guarantor represents and warrants that (i) he is not in violation of or default in any respect with respect to any applicable laws and/or regulations which adversely affect his ability to perform his obligations hereunder and/or (ii) he is not in violation of or default (nor is there any waiver in effect which, if not in effect, would result in a violation or default) in any material and adverse respect under any indenture, evidence of indebtedness, loan or financing agreement or other agreement or instrument of whatever nature to which he is party or by which he is bound, a default under which might have consequences that would materially adversely affect his ability to perform his obligations hereunder.

(g)     The Guarantor represents and warrants that he and his attorney have read and reviewed the Note and all other Loan Documents in connection therewith; the representations and warranties of the Borrower contained therein and same are correct and complete; and the Guarantor consents, in all respects, to the terms and conditions of the Note, the Loan and all documents in connection therewith.

(h)     This Guaranty Agreement has been properly executed and delivered and constitutes the valid and legally binding obligation of the Guarantor, enforceable in accordance with its terms.

10.     The Guarantor covenants and agrees as follows:

(a)     In the event that any default, adverse litigation or material adverse change

5

NWK 212755.2

occurs in the financial condition of either Guarantor, then such Guarantor shall promptly notify the Lender of such occurrence.

(b)     The Guarantor shall prepare and timely file all federal, state and municipal tax returns required to be filed by him, and he shall promptly pay and discharge all taxes, assessments and other governmental charges or levies imposed upon him, or in respect of any of his property and assets and all lawful claims, before the same shall become in default (except those taxes, assessments and other governmental charges or levies that he may be contesting in good faith by appropriate proceedings, provided that such contest shall not result in a new lien being placed on any of his properties or assets or result in any of his properties or assets being subject to loss or forfeiture as a result of nonpayment of such items during the continuance of said contest) and for which he has maintained either adequate reserves or accrued the estimated liability on his balance sheet for payment thereof. The Guarantor covenants and agrees that he shall submit to the Lender his federal and state individual income tax returns by April 15 of each year.

(c)     The Guarantor shall deliver to the Lender from time to time upon request of Lender and in all events by March 31 of each year, personal financial statements addressed to the Lender in form satisfactory to the Lender, as well as reports of real estate holdings and cash flow schedules. The Guarantor represents and warrants the accuracy of any and all information contained therein.

(d)     The Guarantor shall indemnify, protect, defend and save harmless the Lender as well as the Lender's directors, officers, employees, investors, agents, attorneys and shareholders (hereinafter referred to as the "Indemnified Party") from and against any and all losses, damages, expenses or liabilities of any kind or nature and from any suits, claims, or demands, including reasonable counsel fees incurred in investigating or defending such claim, suffered by any of them and caused by, relating to, arising out of, resulting from, or in any way connected with the Obligations; provided, however, the Guarantor shall not be obligated to indemnify, protect, defend and save harmless and indemnify the Indemnified Party, if the loss, damage, expense, or liability was caused by or resulted from said Indemnified Party's own gross negligence or willful misconduct. In case any action shall be brought against an Indemnified Party based upon any of the above and in respect to which indemnity may be sought against the Guarantor, said Indemnified Party against whom such action was brought, shall promptly notify the Guarantor in writing, and the Guarantor shall assume the defense thereof, including the employment of counsel selected by the Guarantor and reasonably satisfactory to said Indemnified Party, the payment of all costs and expenses and the right to negotiate and consent to any settlement to which the Indemnified Party must agree. Upon reasonable determination made by said Indemnified Party against whom such action was brought, said Indemnified Party, shall have the right to employ separate counsel in any such action and to participate in the defense thereof; provided, however, that said Indemnified Party shall pay the costs and expenses incurred in connection with the employment of separate counsel. The Guarantor shall not be liable for any settlement of any such action effected without his consent, but if settled with the Guarantor's consent, or if there is a final judgment for the claimant in any such action, the Guarantor agrees to indemnify and save harmless said Indemnified Party against whom such action was brought, from and against any loss or liability by reason of such settlement or judgment. The provisions of this

6

NWK 212755.2

subparagraph (e) shall survive the termination of the Obligations.

(e)    If claim is ever made upon the Lender for repayment or recovery of any amount or amounts received by the Lender in payment for, or on account of, any of the liabilities of any Borrower, and the Lender repays all or part of said amount by reason of (i) any judgment, decree or order of any court or administrative body having jurisdiction over the Lender or any of its property, or (ii) any settlement or compromise of any such claim affected by the Lender with any such claimant (including the Borrower), then, and in such event, the Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon him individually, notwithstanding the cancellation of any note or any other instrument evidencing any liability of the Borrower, and the Guarantor shall be and remain liable to the Lender hereunder for the amount so repaid or recovered to the same extent as if such amount has never originally been received by the Lender. Settlement of any claim by the Lender against the Borrower, whether in any proceeding or not, and whether voluntary or involuntary, shall not reduce the amount due hereunder.

11.    This Guaranty Agreement shall be binding upon the Guarantor, his heirs, executors, successors and/or assigns, and shall inure to the benefit of, and be enforceable by, the Lender, its successors and/or assigns.

12.    No failure or delay on the part of the Lender in exercising any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any such right, power or remedy preclude any other right, power or remedy hereunder. No amendment, modification, termination, or waiver of any provision of this Guaranty Agreement nor consent to any departure by the Guarantor therefrom, shall in any event be effective unless the same shall be in writing making explicit reference to this Guaranty Agreement, and shall be effective only in the specific instance and for the specific purpose for which given. No notice to or demand on the Guarantor in any case shall entitle the Guarantor to any other or further notice or demand in similar or other circumstances.

13.    Unless otherwise indicated differently, all notices, payments, requests, reports, information or demands which any party hereto may desire or may be required to give to any other party hereunder, shall be in writing and shall be personally delivered or sent by telex (answer back received), courier, reliable overnight delivery, or first-class certified or registered United States mail, postage prepaid, return receipt requested, and sent to the party at its address appearing below, or such other address as any party shall hereafter inform the other party hereto by written notice given as aforesaid:

| | |
|---|---|
| If to Guarantor: | See Address on Page 1 |
| With a copy to: | Fitzpatcick Lentz & Bubba<br>4001 Schoolhouse Lane<br>P.O. Box 219<br>Center Valley, Pennsylvania 18034-0219<br>Attention: Catherine E.N. Durso, Esq. |

7

If to the Lender:    Jams Profits LLC
         1 Penn Plaza, Suite 410,
         New York, New York 10119

With a copy to:    Edwards Angell Palmer & Dodge LLP
         One Giralda Farms
         Madison, New Jersey 07940
         Attention: Bruce Kleinman, Esq.

All notices, payments, requests, reports, information or demands so given shall be deemed effective upon receipt or, if mailed, upon receipt or the expiration of the third day following the date of mailing, whichever occurs first, except that any notice of change in address shall be effective only upon receipt by the party to whom said notice is addressed. A failure to send the requisite copies does not invalidate an otherwise properly sent notice to the Guarantor and/or the Lender.

   14. The Lender shall be entitled (i) to enforce the obligations of the Guarantor hereunder, and (ii) to set-off any money owed by the Lender in any capacity to any Guarantor or any property of any Guarantor in the possession of the Lender against any of the monetary obligations of the Guarantor to the Lender under this Guaranty Agreement, without first giving notice to the Guarantor, and the Lender shall be deemed to have exercised such right of set-off and to have made a charge against any such money or property immediately upon the occurrence of such Event of Default, even though the actual book entries may be made at some time subsequent thereof. The Lender is hereby granted a security interest in all such money and property held by it, in favor of the Lender as a result of the Lender's possession of the money and/or other property of the Guarantor. None of the rights of the Lender described in the immediately preceding sentence is intended to diminish or limit the Lender's "set-off rights". Upon any default by the Guarantor with respect to any of its covenants and agreements under this Guaranty Agreement, the Lender may (but shall not be so obligated), without waiving or releasing the Guarantor from any of their Obligations hereunder, and without prejudice to any other right or remedy of the Lender hereunder, whether or not expressly set forth herein, perform such covenant or agreement in respect of which there shall be a default hereunder and in that regard pay such money as may be required or as the Lender may reasonably deem expedient. Any such monies paid by the Lender as aforesaid, together with interest thereon at the rate then applicable (or which would then have been applicable) under the Note shall be due and payable by the Guarantor to the Lender for the account of the Borrower on demand.

   15. If any of the provisions of this Guaranty Agreement shall contravene or be held invalid under the laws of any jurisdiction, this Guaranty Agreement shall be construed as if not containing such provisions and the rights, remedies, warranties, representations, covenants, and provisions hereof shall be construed and enforced accordingly in such jurisdiction and shall not in any manner affect such provision in any other jurisdiction, or any other provisions in this Guaranty Agreement in any jurisdiction.

   16. This Guaranty Agreement shall be governed by and construed and interpreted in accordance with, the laws of the State of New Jersey and no defense given or allowed by the laws of

8

NWK 212755.2

any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New Jersey. The Lender may bring any action or proceeding to enforce or arising out of this Guaranty Agreement in any court of competent jurisdiction. If the Lender commences such an action in a court located in the State of New Jersey, or New York County, New York or any United States District Court in New Jersey or in the Southern District of New York, the Guarantor hereby agrees that he will submit to the personal jurisdiction of such courts and will not attempt to have such action dismissed, abated or transferred on the ground of forum non conveniens, and in furtherance of such agreement the Guarantor hereby agrees and consents that without limiting other methods of obtaining jurisdiction, jurisdiction over him in any such action or proceeding may be obtained within or without the jurisdiction of any such court and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the Guarantor by registered mail to or by personal service at the last known address of the Guarantor; provided, however, that nothing contained herein shall prohibit the Guarantor from seeking, by appropriate motion, to remove an action brought in New Jersey State Court to the United States District Court for the District of New Jersey or in the New York State Court to the United States District Court for the Southern District of New York. If such action is so removed, however, the Guarantor shall not seek to transfer such action to any other district, nor shall the Guarantor seek to transfer to any other district any action, which Lender originally commences in such federal court. Any action or proceeding brought by the Guarantor arising out of this Guaranty Agreement shall be brought solely in a court of competent jurisdiction located in the State of New Jersey, or in a United States District Court in New Jersey.

17.    Section headings in this Guaranty Agreement are included herein for convenience of reference only and shall not constitute a part hereof for any other purpose.

18.    The Guarantor in all respects consents to the terms and provisions of the Note and any other extension of credit or other agreements, instruments, documents, and writings in connection therewith and that until termination, this Guaranty Agreement is made, and shall continue as to any of the Obligations without regard to the existence of other collateral or security or guaranties, if any, or to the validity or effectiveness of any or all thereof; and any or all such collateral and security and guaranties made, from time to time, without notice to or consent of the Guarantor, be sold, released, surrendered, exchanged, settled, compromised, waived, subordinated or modified, with or without consideration, on such terms and conditions as may be acceptable to Lender without in any manner affecting or impairing the liability of the Guarantor.

19.    **THE GUARANTOR AGREES TO WAIVE ALL RIGHTS TO TRIAL BY JURY OF ANY ISSUES RAISED UNDER THIS INSTRUMENT OR ANY OTHER INSTRUMENT OR AGREEMENT SIGNED BY AND BETWEEN THE GUARANTOR AND THE LENDER.**

20.    In all reference herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of this Guaranty Agreement may require.

21.    In case of any proceedings to collect any liabilities of either Guarantor to the Lender, or

9

the necessity of enforcing any of the terms of the Loan Documents the Guarantor shall pay all reasonable costs and expenses of every kind for enforcement collection, sale or delivery, including reasonable attorneys' fees, and after deducting such costs and expenses from the proceeds of sale or collection, the Lender may apply any residue to the liabilities of the Guarantor who shall continue to be liable for any deficiency, with interest at the rate provided for in the Loan Documents.

22.     To the extent any of the terms or conditions of this Guaranty Agreement conflict with any of the terms or conditions of the Note or any of the other Loan Documents, the terms of the clause most favorable to Lender shall govern.

23.     If there is more than one guarantor hereunder, the Obligations of the Guarantor under this Agreement are joint and several.

**IN WITNESS WHEREOF**, the Guarantor has caused this Guaranty Agreement to be duly executed and delivered all as of the day and year first above written.

WITNESS:                                    **GUARANTOR:**

_____          _____
                                            **James B. Harrison, Individually**


COMOMONWEALTH OF PENNSYLVANIA          )
                                                        ) SS:
COUNTY OF _Le high_                              )

I certify that on this 2nd day of June, 2008, personally appeared before me James B. Harrison who I am satisfied is the person who signed the within instrument as referenced in the within document as his voluntary act for the purpose set forth therein.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Louise Hardcastle, Notary Public
Upper Saucon Twp., Lehigh County
My Commission Expires March 31, 2009
Pennsylvania Association of Notaries

10

NWK 212755.2